UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VAPE CENTRAL GROUP, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 24-3354 (RDM) |

## MEMORANDUM OPINION

Vape Central Group, LLC ("Vape Central") brings this action against the U.S. Food and Drug Administration ("FDA"), alleging that an administrative civil penalty proceeding that the FDA has brought against the company for the sale of an adulterated tobacco product violates its Seventh Amendment right to trial by jury. But before reaching the merits of that claim, however, the Court must first decide whether it has subject-matter jurisdiction. In answering that question, the Court begins with the statutory text, which vests exclusive jurisdiction in the courts of appeals to review FDA civil-penalty orders. *See* 21 U.S.C. § 333(f)(6). Vape Central does not dispute that, in most cases, an aggrieved party must wait to bring a challenge to and FDA enforcement action in the courts of appeals after the agency enters a final order. But it urges the Court to recognize an exception to that jurisdictional rule in this case, based on the theory that the company would suffer a "here-and-now injury" if forced to participate in a civil penalty proceeding without the benefit of a jury—an injury that, on Vape Central's telling, would stand separate and apart from the entry of any adverse civil penalty order.

For the reasons explained below, Vape Central's argument fails.  Although the Supreme Court has "recognized a narrow exception to Congress's prescribed path for judicial review of agency action" in the courts of appeals in certain extraordinary circumstances—most notably, where the agency is allegedly "'wielding authority unconstitutionally in all or a broad swath of its work,'" *Loma Linda-Inland Consortium for Heathcare Educ. v. NLRB*, 2023 WL 729839, at *11 (D.C. Cir. May 25, 2023) (quoting *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 189 (2023)), this is not, by any measure, such a case.  To the contrary, Vape Central's Seventh Amendment argument is entirely dependent on what happens in the administrative proceeding, and the harm that Vape Central claims that it will be forced to ensure if required to participate in the administrative proceeding may never occur at all.  That speculative and fact-dependent harm, in any event, is both unremarkable and in no way comparable to the type of "here-and-now injury" that the Supreme Court has held can, at least at times, justify immediate review before a federal district court.

The Court will, accordingly, **GRANT** the FDA's motion for summary judgment, Dkt. 8; **DENY** Vape Central's cross-motion for summary judgment, Dkt. 12; **DENY** Vape Central's motion for a preliminary injunction, Dkt. 3; and **DISMISS** the case for lack of jurisdiction, all without reaching the merits of Vape Central's Seventh Amendment claims.

## I. BACKGROUND

A.     **Regulatory Background**

The FDA was given the authority to regulate tobacco products just sixteen years ago.  For many years, the FDA played a minimal role in the regulation of tobacco products.  *See Philip Morris USA Inc. v. U.S. Food & Drug Admin.*, 202 F. Supp. 3d 31, 36 (D.D.C. 2016) (explaining that "[i]n 1996, the FDA attempted to bring the tobacco industry within its jurisdiction by asserting that nicotine was a 'drug' as defined under the Food, Drug, and Cosmetic Act" but that

"endeavor failed . . . when the Supreme Court determined that the FDA had exceeded its statutory authority and struck down its attempts at regulation" (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 (2000))). That changed in 2009, when Congress enacted the Family Smoking Prevention and Tobacco Control Act ("TCA" or "the Act"), Pub. L. No. 111-31, 123 Stat. 1776 (2009).

The TCA makes the FDA the "primary Federal regulatory authority with respect to the manufacture, marketing, and distribution of tobacco products." *Id.* § 3(1). Under the Act, the FDA is authorized to impose "tobacco product standards" that govern the ingredients or properties of tobacco products, *see* 21 U.S.C. § 387g; to restrict the sale and distribution of tobacco products, *see id.* § 387f(d)(1); and to prescribe regulations governing the manufacturing of these products, *see id.* § 387f(e). *See Fontem US, LLC v. U.S. Food & Drug Admin.*, 82 F.4th 1207, 1212 (D.C. Cir. 2023). "The Act also provides that all new tobacco products—those not commercially marketed in the United States prior to February 2007—must be approved by the FDA before being marketed to the public." *Id.* (citing 21 U.S.C. § 387j). This includes "electronic nicotine delivery systems," more commonly known as vaping products or e-cigarettes, which "utilize solutions containing nicotine" that can be vaporized and then inhaled. *Fontem US, LLC v. U.S. Food & Drug Admin.*, 82 F.4th 1207, 1212 (D.C. Cir. 2023).[1] New

---

[1] The TCA did not immediately regulate e-cigarettes, but it authorized the FDA to subject "any product made or derived from tobacco . . . intended for human consumption" to the provisions of the TCA. 21 U.S.C. § 321(rr)(1). "In 2016, the agency invoked this authority to deem vaping products subject to the Act." *Fontem*, 82 F.4th at 1212; *see also* Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products, 81 Fed. Reg. 28,974, 28,975 (May 10, 2016). "As a result of this . . . [r]ule, manufacturers of vaping products were required to secure premarketing approval from the FDA unless the product in question had been marketed prior to 2007." *Fontem*, 82 F.4th at 1212.

tobacco products, including vaping products, that have not been FDA approved are deemed "adulterated." 21 U.S.C. § 387b(6). The "introduction or delivery for introduction into interstate commerce of any . . . tobacco product . . . that is adulterated" is "prohibited," and a person who introduces such a product can face criminal prosecution in district court. *Id.* § 331(a), 333(a)(1) ("Any person who violates a provision of section 331 of his title shall be imprisoned for not more than one year or fined not more than $1,000, or both.").

Congress also authorized the Secretary of Health and Human Services ("Secretary") to enforce the TCA—including the prohibition on introducing adulterated products into interstate commerce—through the administrative civil penalty scheme established in the Food, Drug, and Cosmetic Act ("FDCA"). *See id.* § 333(f)(5). The FDCA authorizes the Secretary to assess civil penalties in a variety of situations related to the sale or distribution of food, drugs, and tobacco. *See id.* § 333(f). As relevant here, Congress provided that "any person who violates a requirement" of the TCA "shall be liable to the United States for a civil penalty" of up to "$15,000 for each such violation" (or $250,000 for some specified violations), with a $1,000,000 cap on the penalties that can be levied "in a single proceeding." *Id.* § 333(f)(9)(A).[2] Before the Secretary may impose a penalty, however, he must comply with the procedural requirements set out in the FDCA: the Secretary must "give written notice to the person to be assessed a civil penalty" and must "provide such person an opportunity for a hearing on the order." *Id.* § 333(f)(5)(A). Congress also specified the considerations that the Secretary "shall" take into account when "determining the amount of a civil penalty," including "the nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability to pay,

---

[2] These penalty amounts are adjusted to keep pace with inflation. As of 2024, when the administrative complaint was filed against Vape Central, the relevant amounts were $21,348, $355,806, and $1,423,220, respectively. *See* 45 C.F.R. § 102.3.

4

effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require." *Id.* § 333(f)(5)(B).

The Secretary has delegated his civil penalty enforcement authority to the Commissioner of the FDA and detailed the administrative procedures for imposing these penalties. *See* 21 C.F.R. Part 17 (2025). First, the "Center with principal jurisdiction"—for tobacco products, the Center for Tobacco Products or "CTP"—must initiate an "administrative civil money penalty action[] by serving on the respondent(s) a complaint." *Id.* § 17.5(a). The proceeding is then assigned to an administrative law judge ("ALJ"), who "shall conduct a fair and impartial hearing" upon request from the respondent. *Id.* § 17.5(d), 17.19(a). After that hearing, the ALJ "issue[s] an initial decision" that contains, to the extent necessary, "findings of fact, conclusions of law, and the amount of any penalties and assessments imposed." *Id.* § 17.45(a). Under the governing regulations, however, the ALJ "does not have the authority to find Federal statutes or regulations invalid." *Id.* § 17.19(c). After receiving the ALJ's decision, either party can, if aggrieved, appeal the decision to the Departmental Appeals Board, which can affirm or vacate the ALJ's decision. *Id*. § 17.47.

The road does not end with the Departmental Appeals Board, though, because the statute provides for judicial review in the courts of appeals, at which stage constitutional arguments can receive a full presentation. *Cf. SEC v. Jarkesy*, 603 U.S. 109, 119 (2024) (considering petitioner's Seventh Amendment claims on review from an administrative proceeding). Any person "aggrieved by an order assessing a civil penalty" and who requested a hearing during the administrative process "may file a petition for judicial review of such order with the United States Court of Appeals for the District of Columbia Circuit or for any other circuit in which

5

such person resides or transacts business" within 60 days of receiving a decision from the Departmental Appeals Board. 21 U.S.C. § 333(f)(6); 21 C.F.R. § 17.51.

Notably, an aggrieved party is not required to pay any civil penalties assessed by the agency until after judicial review is complete. Unpaid civil penalties can be recovered by the Attorney General in federal district court, but only after the 60-day period for judicial review has expired or, in the case that judicial review is requested, after the appeals court has "entered a final judgment in favor of the Secretary." 21 U.S.C. § 333(f)(7). As a result, an aggrieved party is guaranteed an Article III forum to raise any constitutional challenges before paying any penalties.

**B.     Factual Background**

In October 2024, the CTP "filed an administrative complaint for a civil money penalty of $21,348 against Vape Central." Dkt. 1 at 9 (Compl. ¶ 44). The factual allegations in the administrative complaint are straightforward. It alleges (1) that Vape Central "sells and/or distributes tobacco products through its online establishment," Dkt. 3-3 at 4 (Admin. Compl. ¶ 13); (2) that "CTP issued a Warning Letter" to Vape Central on August 17, 2020, in which it warned that Vape Central was selling tobacco products that lacked FDA authorization and were therefore considered "adulterated," *id.* at 4–5 (Admin. Compl. ¶ 14); (3) that an FDA-commissioned inspector conducted an inspection of Vape Central's website and purchased from that website a "Cali UL8000 Kiwi Dragon Berry [electronic nicotine delivery systems] product," *id.* at 5 (Admin. Compl. ¶ 15); (4) that Vape Central fulfilled the inspector's order by "shipp[ing] the Cali UL8000 Kiwi Dragon Berry" from Florida to the FDA in Maryland, *id.* (Admin. Compl. ¶ 16); (5) that this product is a "new tobacco product" because it was not commercially marketed in the United States as of February 15, 2007, *id.* (Admin. Compl. ¶ 17); and (6) that the FDA has not issued either an order approving the marketing of the Cali UL8000 Kiwi Dragon Berry or an

order declaring it substantially equivalent to a product already approved, *id.* (Admin. Compl. ¶¶ 18–19).

Vape Central answered the administrative complaint on November 27, 2024, and, in doing so, the company admitted most of the factual allegations. It declined to admit or to deny paragraphs 1–12, 18–20, and 21–22 on the grounds that those paragraphs contained introductory material, set forth conclusions of law, or merely "set forth CTP's advice with respect to [Vape Central's] procedural rights." Dkt. 3-4 at 2–3. It admitted the factual allegations contained in paragraphs 13–14—that is, that Vape Central sells or distributes tobacco products online and that CTP issued a warning letter to Vape Central in August 2020. *See id.* at 2; *see also* Dkt. 3-3 at 4–5 (Admin. Compl. ¶¶ 13–14). Finally, Vape Central declined to admit or to deny the allegations contained in paragraphs 15–17 for lack of "sufficient information." Dkt. 3-4 at 3. As discussed further below, however, counsel for Vape Central conceded at oral argument in this case that it has no basis to question the accuracy of even those allegations.

C.  **Procedural History**

Vape Central filed this action on November 27, 2024, alleging that under *SEC v. Jarkesy*, 603 U.S. 109 (2024), the FDA's administrative proceeding "violates [the company's] right to a jury trial under the Seventh Amendment." Dkt. 1 at 1–2 (Compl. ¶¶ 1–2). Vape Central asks the Court to declare that "the FDA's civil money penalty proceeding against [Vape Central] violates the Seventh Amendment" and to order that the FDA "dismiss with prejudice the Administrative Complaint against" Vape Central. *Id.* at 12 (Compl. ¶ 61). But Vape Central does not confine its request for relief to the proceedings against it. It also asks the Court to declare that "the FDCA's civil money penalty provisions for tobacco products, 21 U.S.C. § 331(f)(9), violate the Seventh Amendment" and to "prohibit[]" the FDA from "adjudicating civil money penalties in administrative proceedings" writ large. *Id.*

7

The same day that Vape Central filed suit it also moved for a preliminary injunction. *See* Dkt. 3. That motion asks the Court to "enter an order that stays the [FDA's] administrative civil money penalty proceeding against" Vape Central pending resolution of this case. *Id.* at 1. The FDA opposed Vape Central's motion for a preliminary injunction and moved for summary judgment, arguing both that this Court lacks jurisdiction to entertain a collateral attack on the administrative proceeding and that, on the merits, no jury trial is required with respect to civil penalties levied for TCA violations. *See* Dkt. 8-1 at 6–7. In response, Vape Central cross-moved for summary judgment and asked the Court to consolidate the hearing on its motion for a preliminary injunction with proceedings on the merits pursuant to Federal Rule of Civil Procedure 65(a). *See* Dkt. 10 at 5. The Court granted Vape Central's request to consolidate the proceedings on its motion for a preliminary injunction with the merits, Min. Entry (Feb. 6, 2025), and held a hearing on the pending motions on February 19, 2025.

Each of these motions is now ripe for decision.

## II. ANALYSIS

As a general matter, federal courts "may not rule on the merits of a case without first determining that [they] have . . . subject matter jurisdiction." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–112 (1998)). Here, the FDA argues that 21 U.S.C. § 333(f)(6) vests challenges to TCA administrative proceedings, including Vape Central's Seventh Amendment challenge, exclusively in the courts of appeals. *See* Dkt. 8-1 at 11. The Court agrees.

**A.     Preclusion**

Although the default rule generally authorizes federal district courts to consider challenges to the lawfulness of administrative proceedings, Congress can "preclude district

8

courts from exercising jurisdiction over challenges to federal agency action" by substituting "an alternative scheme of review." *Axon Enter.*, 598 U.S. at 185. Sometimes Congress does so explicitly. *Id.* Other times, it does so implicitly by "specifying a different method to resolve claims about agency action," typically by providing for "review in a court of appeals following the agency's own review process." *Id.* The statute at issue here follows this latter path. It provides: "Any person . . . aggrieved by an order assessing a civil penalty . . . may file a petition for judicial review of such order with the United States Court of Appeals for the District of Columbia Circuit or for any other circuit in which such person resides or transacts business." 21 U.S.C. § 333(f)(6).

Even when Congress has implicitly divested the district courts of jurisdiction by providing for direct review in the courts of appeals, this allocation of jurisdiction "does not necessarily extend to every claim concerning agency action." *Axon Enter.*, 598 U.S. at 185. It extends only to claims "of the type Congress intended to be reviewed within [the] statutory structure." *Id.* at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208 (1994)). Three considerations, referred to as the *Thunder Basin* factors, help courts determine whether a claim is subject to the presumptive "statutory structure" for direct appellate review or whether it falls outside this scheme.

The first *Thunder Basin* factor asks whether "precluding district court jurisdiction [would] 'foreclose all meaningful judicial review' of the claim?" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13). The second factor asks whether "the claim [is] 'wholly collateral to [the] statute's review provisions?'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). And the third factor asks whether "the claim [is] 'outside the agency's expertise'?" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). But the Supreme Court has cautioned that "the ultimate question is how

9

best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question"—and that the *Thunder Basin* factors are meant simply to "aid in th[at] inquiry." *Id.*; *see also Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018) (cautioning that these factors are "general guideposts" that should not be "applied pursuant to any strict mathematical formula"). When each of the *Thunder Basin* factors counsels in favor of district court jurisdiction, it is "presume[d] that Congress does not intend to limit jurisdiction." *Id.* (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)). But "the same conclusion might follow" even "if the factors point in different directions." *Id.* When that happens, courts must return to the lodestar of whether Congress intended the type of claim at issue to be swept into the statutory enforcement scheme.

### B. Application of the *Thunder Basin* factors

Vape Central does not dispute that district courts are typically precluded from adjudicating challenges to TCA civil penalty proceedings. *See* Dkt. 12 at 6. It argues, instead, that its claim falls outside of that scheme because "all three of the *Thunder Basin* factors come down on the side of this Court having jurisdiction over Vape Central's claim." Dkt. 12 at 10. The Court is unpersuaded.

1. *Factor One: Would precluding district court jurisdiction foreclose all meaningful judicial review?*

To start, "all meaningful judicial review" will not be foreclosed if Vape Central's claims follow the FDCA's statutory review procedures. Although the ALJ (and arguably the Departmental Appeals Board) will lack authority to resolve Vape Central's Seventh Amendment defense, if aggrieved by the ALJ's decision, the company will be able to raise the defense in a petition for review in the court of appeals. *See* 21 U.S.C. § 333(f)(6). Using that process, Vape

Central can secure "meaningful review" of the agency's decision, including by arguing that the administrative process was defective because it deprived the company of its Seventh Amendment right (if any) to a jury trial.  *See Thunder Basin*, 510 U.S. at 212–13.

In general, review of agency decisions must await finality; that is, in at least most circumstances, a regulated party has no right to obtain judicial review of the relevant rules and procedures until after the agency has rendered a decision.  That rule applies with particular force, moreover, where, as here, the regulated party will suffer no adverse consequences—beyond the cost of participating in the administrative proceeding—until after the decision is final and until after the regulated party has obtained "meaningful review" of the agency's decision.  As explained above, the Attorney General is authorized to bring a proceeding to "recover the amount assessed," but only "after the order making the assessment becomes final" or, if judicial review is sought, after the court of appeals "has entered a final judgment in favor of the Secretary."  21 U.S.C. § 333(f)(7).  If the court of appeals agrees with Vape Central that Seventh Amendment applies to public health enforcement proceedings, like this one, and agrees that the administrative process involved the resolution of disputed issues of fact, the company can ask the court of appeals to vacate the civil penalty order, thereby redressing any harm before it occurs.  Indeed, that is precisely what happened in *Jarkesy v. SEC*, 34 F.4th 446, 454, 466 (5th Cir. 2022), the case that Vape Central invokes (perhaps mistakenly) in support of its Seventh Amendment argument, *see SEC v. Jarkesy*, 603 U.S. 109 (2024).  *See* Dkt. 1 at 1–2 (Compl. ¶ 1).

It is thus unsurprising that every district court that has considered the question post-*Jarkesy* has held that the relevant statutory procedures for challenging final administrative orders provide a sufficient opportunity for "meaningful review" of any Seventh Amendment defense.  *See VHS Acquisition Subsidiary No. 7. v. NLRB*, 2024 WL 4817175, at *3 (D.D.C. Nov. 17,

2024) (holding that "[t]he first *Thunder Basin* factor . . . points towards a lack of district court jurisdiction" because the plaintiff "can still receive 'meaningful review' of its Seventh Amendment challenge" in the "circuit court"); *Blankenship v. Fin. Indus. Regul. Auth.*, 2024 WL 4043442, at *2, n.4 (E.D. Pa. Sept. 4, 2024) (noting that "*Jarkesy* came up on direct review, not collateral attack" and concluding that "a finding of no jurisdiction in this court will not foreclose all 'meaningful' judicial review" of the plaintiff's Seventh Amendment claim); *Nexstar Media, Inc. Grp. v. NLRB*, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (determining that the first "*Thunder Basin* factor weigh[ed] against jurisdiction" of the plaintiff's Seventh Amendment claim because that claim could "be raised in the Court of Appeals which will have authority to modify" or "set [] aside" the agency's ruling).

Vape Central nonetheless disagrees, arguing that it needs to obtain judicial review now to avoid the "irreparable harm" it will suffer if forced "to incur the time and expense of an unconstitutional proceeding—*i.e.*, a proceeding in which findings of fact will be made by an ALJ rather than a jury." Dkt. 10 at 6. According to Vape Central, the cost of participating in such a constitutionally defective proceeding constitutes the type of "here-and-now injury" that justifies immediate district court review under *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023). *Id.* at 191. But that contention misunderstands the "narrow exception to Congress's prescribed path for judicial review of agency action" that the Supreme Court recognized in Axon. *Loma Linda-Inland Consortium for Healthcare Educ.*, 2023 WL 7294839, at *11. The "here-and-now injury" at issue in *Axon* was not the imposition of a fine that could have been remedied on judicial review. 598 U.S. at 191. Rather, it was "'being subjected' to 'unconstitutional agency authority'"—that is, being forced to participate in "a 'proceeding by an unaccountable ALJ.'" *Id.* It was being "subject[ed] to an illegitimate proceeding, led by an

12

illegitimate decisionmaker." *Id.* "And as to that grievance," the Supreme Court held, "the court of appeals [could] do nothing: A proceeding that has already happened cannot be undone." *Id.*

The Supreme Court took pains to emphasize, moreover, the limited scope of this conclusion. It does not represent a "newfound enthusiasm for interlocutory review," nor does it call into question the long-settled principle "that 'the expense and disruption' of 'protracted adjudicatory proceedings' [does] not justify immediate review." *Id.* at 192. What mattered in Axon was that the challenge had nothing to do with the ultimate result of the administrative process; rather, the challenge alleged that "the entire proceeding [was] unlawful" and that subjecting the regulated party to a constitutionally "illegitimate proceeding causes [a] legal injury" that is wholly "independent of any rulings the ALJ might make." *Id.* at 182. In the words of the Supreme Court, the challenge was "fundamental, even existential," and it posited "that the agencies, as currently structured, [were] unconstitutional in much of their work." *Id.* at 180.

Here, in contrast, Vape Central does not challenge the legal authority of the ALJ to perform much of her work, nor does the company contend that its injury consists of being subjected to the authority of an "illegitimate decisionmaker." Rather, the company's principal complaint focuses on the expense of participating in the administrative proceeding. Unlike the challenge in *Axon*, moreover, Vape Central focuses on a narrow slice of the administrative proceeding, arguing that the ALJ lacks authority to resolve any disputed issues of fact. But, far from raising a "fundamental" or "even existential" challenge to the administrative process, it is far from clear that this case (or other, similar cases) will even raise the constitutional issue.

Juries are not necessary at every stage of an action, even when the Seventh Amendment might otherwise apply. By way of analogy, district courts frequently resolve cases at the motion

to dismiss or summary judgment stages, without ever seating a jury. And that process is consistent with the Seventh Amendment, because the right to a jury trial arises only if "there are issues of fact to be determined." *In re Peterson*, 253 U.S. 300, 310 (1920). The Supreme Court has also held that "the Seventh Amendment does not require a jury trial" for "determination of a civil penalty" amount. *Tull v. United States*, 481 U.S. 412, 427 (1987). Thus, Vape Central's Seventh Amendment claim is best characterized, not as a challenge to an "unconstitutional proceeding," but as a challenge to the ALJ's authority—if necessary—to resolve any disputed issues of fact.

Like federal district courts, FDA ALJs may render "summary decision[s]" on "any issue in the hearing," "if the pleadings, affidavits, and other materials filed in the record . . . show that there is no genuine issue as to any material fact." 21 C.F.R. § 17.17(a), (b). As a result, the administrative proceeding against Vape Central could conclude without any Seventh Amendment right "accru[ing]." *Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 320 (1902). Indeed, although Vape Central urges the Court to enjoin the FDA from continuing to pursue the civil money penalties administrative proceeding against it as violative of the Seventh Amendment, Dkt 1 at 12 (Compl. ¶ 61), the company has yet to identify a single factual issue that is dispute.

As noted above, when Vape Central answered the administrative complaint, it denied only three factual allegation—and it did so merely because it lacked "sufficient information upon which to admit or deny th[ose] allegations." Dkt. 3-4 at 3. At oral argument, however, Vape Central's counsel either admitted the previously contested allegations or conceded that he had no reason to doubt their accuracy. The first of those allegations simply averred that "an FDA-commissioned inspector conducted an" online inspection of the Vape Central website and

14

"purchased [Vape Central's] Cali UL800 Kiwi Dragon Berry ENDS product." Dkt. 3-3 at 5 (Admin. Compl. ¶ 15). When asked whether Vape Central has any evidence to dispute that allegation, counsel responded, "I don't have any reason to believe it is not true . . . at this point." Feb. 19, 2025 Hrg. Tr. (Rough at 13). The second allegation averred that "[i]n response to FDA's order and purchase, [Vape Central] shipped the Cali UL800 Kiwi Dragon Berry ENDS product . . . to FDA in Maryland." Dkt. 3-3 at 5 (Admin. Compl. ¶ 16). When asked about this allegation, counsel conceded that "the evidence that was . . . produced in discovery probably has the shipping labels." Feb. 19, 2025 Hrg. Tr. (Rough at 13). Finally, the third allegation averred that the "Cali UL800 Kiwi Dragon Berry ENDS product . . . is a 'new tobacco product' because it was not commercially marked in the United States as of February 15, 2007." Dkt. 3-3 at 5 (Admin. Compl. ¶ 17). And when asked about this one, counsel responded: "That is true." Feb. 19, 2025 Hrg. Tr. (Rough at 13).

It is thus likely that the administrative proceedings can—and will—be resolved without the need for any factfinding regarding liability. If the CTP asks the ALJ to render a summary decision as to liability, Vape Central will not be able to "rest on mere allegations or denials or general descriptions of positions and contentions" but, instead, will need to "set forth specific facts showing that there is a genuine issue of material fact for the hearing" and provide support for those facts. 21 C.F.R. § 17.17(c). Absent such a showing, Vape Central's Seventh Amendment defense will never even arise—calling into question not only this Court's statutory jurisdiction, but also its Article III jurisdiction. And, in any event, this uncertainty demonstrates why review "meaningful judicial review" would not be foreclosed by awaiting a final agency order. Indeed, if anything, "meaningful judicial review" cannot take place until after the administrative proceeding is completed, so the reviewing court can determine whether any facts

were placed in genuine dispute. *See Elgin v. Dep't of Treasury,* 567 U.S. at 22–23 (holding that a constitutional claim was unavailable because "preliminary questions" within the agency's wheelhouse "may obviate the need to address the constitutional challenge."). In short, far from involving a "here-and-now injury," the injury alleged here may never occur.

Vape Central makes two arguments in response. Neither is persuasive. First, the company stresses that the statutory enforcement regime in *Axon* included summary decision procedures similar to those at issue here. Dkt. 10 at 10. But that misses the point. The possibility that the relevant facts will not be disputed matters with respect to a Seventh Amendment defense; if the facts are undisputed, Vape Central's Seventh Amendment argument fails at the outset, without requiring the Court even to consider whether the public rights doctrine applies in this context. In contrast, the availability of summary decision procedures does nothing to diminish a challenge, like the challenge raised in *Axon*, to the constitutional authority of tenure-protected ALJs to adjudicate disputes.

Second, Vape Central argues that, if the FDA was required to bring civil monetary penalty proceedings in federal district court, as opposed to in an administrative proceeding, the regulated party might have the opportunity to take discovery and that discovery might provide a basis for challenging the FDA's factual allegations. The company argues, for example that it would have the opportunity to depose the investigator who completed the undercover purchase. Feb. 19, 2025 Hrg. Tr. (Rough at 15). But availability of discovery has nothing to do with the Seventh Amendment. And, to the extent Vape Central's argument sounds in due process, it may not, in effect, amend its complaint through an opposition to a motion for summary judgment. *See Sai v. TSA*, 326 F.R.D. 31, 33 (D.D.C. 2018). Any such effort, moreover, would likely prove futile, since the Supreme Court has already held that due process challenges to an agency's

16

enforcement proceedings are properly raised at the conclusion of the administrative proceeding through the statutory review mechanism. *See Thunder Basin*, 510 U.S. at 215.

The Court, accordingly, concludes that the first *Thunder Basin* factor weighs heavily against immediate district court review.

2.  *Factor Two: Is the claim wholly collateral to the statute's review provisions?*

For similar reasons, the Court concludes that Vape Central's Seventh Amendment argument is not "wholly collateral" to the statutory review scheme. *Axon Enter.*, 598 U.S. at 184–85. The existence of some genuine dispute of material fact is a necessary prerequisite to Vape Central's Seventh Amendment argument. Unlike *Axon*, this is not a case in which the asserted injury exists separate and apart from the specifics of the adjudicatory process; it is not a case in which the plaintiff challenges the ALJ's "power to proceed at all." *Axon Enter.*, 598 U.S. at 192. In other words, Vape Central is objecting not to the ALJ's "power generally" but to "how that power [will be] wielded" in the context of the particular proceedings against it. *Id.* at 193. As a result, the applicability—or inapplicability—of the Seventh Amendment is inextricably intertwined with administrative process. If no facts relating to liability are reasonably disputed, Vape Central's argument fails at the outset. Or, in other words, Vape Central's Seventh Amendment argument is wrapped up in "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Axon Enter.*, 598 U.S. at 193.

Because Vape Central's Seventh Amendment argument is not "collateral" to the proceeding—and, indeed, may well turn on what happens in the administrative proceeding—the second *Thunder Basin* factors also weighs heavily against immediate district court review.

17

3. *Factor Three: Is the claim outside the agency's expertise?*

This, then, leaves the third factor, which asks whether Vape Central's challenge lies "outside the [FDA's] expertise." *Thunder Basin*, 510 U.S. at 212. As Vape Central correctly observes, the FDA has no expertise regarding the meaning or application of the Seventh Amendment. That question lies squarely within the judicial ken. But framing the application of the third *Thunder Basin* factor in that limited manner risks creating a far more expansive exception to the statutory review procedures than the Supreme Court has ever embraced; most, if not all, questions of constitutional law fall outside the expertise of the administrative agencies. Instead, this factor is better understood to ask whether the challenge raises a pure question of constitutional law, "detached from 'considerations of agency policy,'" *Axon Enter.*, 598 U.S. at 194 (quoting *Free Enter. Fund*, 561 U.S. at 491), or whether it raises a mixed question of law and fact (or policy), where agency action might shed light on the constitutional question or "'obviate the need'" for judicial review, *id.* at 195 (quoting *Elgin*, 567 U.S. at 22–23).

Here, the constitutional question—that is, whether Vape Central in entitled to a jury trial—is intertwined with the question that is before the administrative agency—that is, are any facts in dispute, and, if so, are those facts necessary to resolving whether Vape Central introduced "into interstate commerce an electronic nicotine delivery system . . . product that lacks the premarketing authorization required under the" FDCA, Dkt. 3-3 at 2 (Admin. Compl. ¶ 1). Unlike in *Axon*, moreover, development of the factual record before the administrative agency provides an essential component of Vape Central's claim; it is by no means clear that the company can prevail even if the administrative process reveals disputed factual questions, but it is clear that the company cannot prevail without that record. 598 U.S. at 905. And, unlike in *Axon*, development of the administrative record may well "'obviate the need' to address [the company's] constitutional claim[]." *Id.* at 906 (quoting *Elgin*, 576 U.S. at 22–23). Either way,

18

the agency's expertise regarding the factual dispute, if any, may play a central role in the court of appeals' ultimate resolution of the constitutional argument.

The Court, accordingly, concludes that the third *Thunder Basin* factor also weighs against immediate district court review.

\* \* \*

Considered together, then, the *Thunder Basin* factors weigh against district court jurisdiction for Vape Central's Seventh Amendment claims. Stepping back, moreover, the Court is convinced that "the statutory review scheme . . . reaches the claim in question," *Axon Enter.*, 598 U.S. at 185, and that Congress intended to leave challenges, like the one Vape Central asserts, to the prescribed statutory review procedure. Vape Central will be able to obtain meaningful review in the court of appeals at the conclusion of the administrative proceeding; it is not facing any "here-and-now injury" analogous to the existential challenge at issue in *Axon*; and, indeed, it is far from clear that it will even suffer a "there-and-then injury" at some later time, since the company has yet to identify any genuine dispute of material fact that might, under any circumstances, support a Seventh Amendment claim. Just like a party who is aggrieved by a district court order granting partial summary judgment in favor of that party's opponent—thereby depriving the aggrieved party of a jury trial on that issue—if the record ultimately shows that the ALJ resolved a disputed issue of material fact against Vape Central, the company can raise its Seventh Amendment argument before the court of appeals.

Under these circumstances, the Court is without statutory jurisdiction (and, although the Court need not reach the question, *see U.S. ex rel. Long v. SCS Business & Tech. Inst., Inc.*, 173 F.3d 890, 893 (D.C. Cir. 1999), might also lack Article III jurisdiction).

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment, Dkt. 8; will **DENY** Plaintiff's motion for a preliminary injunction, Dkt. 3; will **DENY** Plaintiff's cross-motion for summary judgment, Dkt. 12; and will **DISMISS** the action without prejudice for lack of jurisdiction.

A separate order will issue.

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  February 27, 2025